786 F.2d 1165
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
J. FORD ROCHE & COMPANY, Plaintiff-Appellant and Cross-Appellee
v.
A & E PLASTIK PAK COMPANY, INC., Defendant-Appellee and
Cross-Appellant.
 84-1433, 84-1499
 United States Court of Appeals, Sixth Circuit.
 2/25/86
 
 E.D.Mich.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Befored MERRITT and MARTIN, Circuit Judges; and HOGAN,* Senior District Judge.
 PER CURIAM.
 
 
 1
 This rather convoluted diversity contract dispute, between the J. Ford Roche & Company and the A & E Plastik Pak Company, Inc., is before us for a second time. We held the district court erred on the first appeal and remanded the case for a trial on damages. A review of the record before us and the rulings made by the district court leads to but one conclusion, and that is that the judgments of the district court should be affirmed.
 
 
 2
 The initial agreement, out of which this litigation began, was signed on February 21, 1972. Roche & Company agreed in writing with Plastik Pak, that Roche & Company would be the exclusive agent for the sale, lease and maintenance of Plastik Pak commercial signs in the state of Michigan. The agreement was subsequently amended when on May 13, 1974, Plastik Pak limited Roche & Company to those signs that were to be acquired by the General Motors Corporation. The agreement provided for payment of commission of one or two percent of gross sales depending on the product sold or leased. In the termination clause, it was provided that the contract would continue until December 31, 1975 and would thereafter automatically renew itself, unless cancelled, for successive three-year periods, as long as J. Ford Roche obtained sales averaging $500,000 a year for the previous three-year period. It is undisputed that Roche & Company obtained such sales, and that they greatly exceeded the required amount. The agreement continued until May 1, 1976 when Plastik Pak terminated the agreement. Under the provisions of the contract the agreement would have terminated itself on December 31, 1978.
 
 
 3
 The issues before the Court in the first appeal, and again in this appeal, were such as to warrant limited precedential value, and therefore the earlier opinion was not published. A review of the record now leads us to believe that this second per curiam should also remain unpublished because the law of the state of Michigan is relatively clear, and the facts and law to be determined apply only to these two parties. It should be further pointed out that because of either animosity or other ill feeling the case has remained extremely confusing, and even now, the court finds it difficult to determine precisely how the parties attack the judgments of the district court. For our purposes, we therefore redefine the issues and first consider whether damages should extend past the period of December 31, 1978.
 
 
 4
 On that issue, our earlier opinion is fairly clear that damages, pursuant to the contract, terminate as of that date. We specifically denied the request of Roche & Company that specific performance past that date be granted, and we can see no reason now for allowing damages beyond that date. Therefore, the district court was correct in finding Roche & Company's supplemental interrogatories, which sought information about Plastik Pak's sales from 1979-1981, irrelevant.
 
 
 5
 The next issue was address involves the amount of damages recoverable by Roche & Company after the breach. A review of the record before us indicates that Roche & Company and Plastik Pak agree that the issue of damages must be resolved under Michigan law. This is true even though the substantive contract issues were to have been resolved under the law of Texas. See Rubin v. Gallagher, 294 Mich. 124 (1940). The record esablishes, and we agree, that the damages which Roche & Company suffered must be composed of the gross commissions his company would have earned during the period following the breach through December 31, 1978, less the expenses which the company would have incurred to earn those commissions but, which were saved as a result of Plastik Pak's breach. See Benfield v. Porter, 1 Mich. App. 543, 547 (1965). Throughout the proceedings before the district court, and here, there has been a basic disagreement as to exactly which expenses should be deducted in making this calculation. As we noted in our earlier opinion, certain deductions for overhead were appropriate in the computation of damages. We review and approve for the purposes of this appeal the findings made by the district court as to this issue. On the issue of the law to be applied, we can find no error with the determinations made.
 
 
 6
 To begin with, it should be pointed that a contract, similar to that one entered into between Roche & Company and Plastik Pak, had existed prior to 1972. Roche & Company had hired Charles Handley to assist in servicing Plastik Pak's General Motors account. At that time Roche spent very little time working on the General Motors account, but was available if necessary to assist Handley in the servicing of the General Motors account. Handley remained with Roche until 1975. Beginning in 1975, Roche himself handled most of the day-to-day operations for General Motors. Handley had been paid prior to 1975 a salary of approximately $12,000 a year. According to the testimony in the trial on damages, Roche spent approximately 10-12 hours a week servicing the General Motors account and spent additional time attempting to develop other business. The deductibility of Roche's salary appears to have been a principle matter which presented the district court with a difficult choice. In this area it appears that during the years 1972 through 1975 Roche was paid an average salary of $47,000 a year. During the same period, the net income before taxes of the J. Ford Roche Company averaged about $10,000 a year. The gross commissions received by J. Ford Roche from Plastik Pak during the years up to the termination averaged approximately $100,000 a year. Expenses other than J. Ford Roche's salary as president of the J. Ford Roche & Company in the period 1972 through 1975 approximated $40,000 per year.
 
 
 7
 After the breach took place in 1976, J. Ford Roche, even though he had little business other than the General Motors account, elected to continue in business, and in the 1976-78 period maintained his offices and incurred many of the overhead and other expenses which he had incurred during the 1972-75 period. Mr. Roche testified that substantial efforts toward obtaining new business were made during this period but without avail.
 
 
 8
 At trial, Plastik Pak sought a ruling that all of these overhead expenses were related to work done on the General Motors account, and that they should have ended when the breach occurred. Plastik Pak also sought a ruling that gross commissions be reduced by an amount equal to the salary paid Roche. Roche & Company, on the other hand, argued that no salary deductions be made.
 
 
 9
 The district court instructed the jury with respect to the expenses that
 
 
 10
 [Y]our responsibility is to determine what expenses plaintiff would not have had--what it saved because it was not required to service the General Motors account . . . and when you arrive at that figure you should deduct it from the commission . . .
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 As to salaries, you should deduct the amount you find under the circumstances of this case would have been paid by the corporation to a person, whether the person is an officer or shareholder or merely an employee, to handle the account.
 
 
 14
 The verdict reached by the jury was as follows:
 
 
 15
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 TABLE
 
 16
 As we read Benfield, a question of fact was presented as to salaries and expenses, which was to be determined solely on the basis of the jury's decision. This is a damage case involving the question of the reasonable value of Roche's contracted services for the period beginning with the breach through the last day the contract could have operated, which was December 31, 1978. The question is one of 'reasonable value' and was correctly submitted to the jury under appropriate instructions under Michigan law. Thus, the determination of the jury was appropriate under the facts of the case.
 
 
 17
 The final issue relates to interest paid on the verdict of $129,894. The relevant Michigan statute provides
 
 
 18
 (1) Interest shall be allowed on any money judgment recovered in a civil action, as provided in this section.
 
 
 19
 (2) For complaints filed before June 1, 1980, in an action involving other than a written instrument having a rate of interest exceeding 6% a year, the interest on the judgment shall be calculated from the date of filing the complaint to June 1, 1980 at the rate of 6% a year and on and after June 1, 1980 to the date of satisfaction of the judgment at the rate of 12% per year compounded annually . . ..
 
 
 20
 Mich. Comp. Laws Sec. 600.6013.
 
 
 21
 In interpreting the statute, Michigan courts have held that interest does not begin to run from the date of the filing of the complaint in every case. The Michigan courts have consistently held that an award of interest is not for the purpose of punishment, but to compensate the plaintiff for the loss of the use of money with its attendant expense and delay. See Foremost Life Insurance Company v. Waters, 125 Mich. App. 799 (1983). In the present case, the jury held that commissions were to be paid to Roche & Company on sales to General Motors. Until General Motors paid those commissions to Plastik Pak, it had nothing to pay Roche & Company. Interest should begin to accrue on damages on the specific dates in the three-year period when the commissions became due and payable to Roche & Company. Thus, Roche & Company is entitled to the following awards of interest: Interest at the rate of 6% on $35,546 from December 31, 1976 until June 1, 1980, and thereafter at 12% until paid. Interest at the rate of 6% on $38,845 from December 31, 1977 until June 1, 1980, and thereafter at 12% until paid. Interest at the rate of 6% on $55,503 from December 31, 1978 until June 1, 1980, and thereafter at 12% until paid.
 
 
 22
 Based on the foregoing reasons, the judgment of the district court is hereby affirmed as to all issues raised on this appeal.
 
 
 
 *
 Honorable Timothy S. Hogan, Senior United States District Judge for the Southern District of Ohio, sitting by designation